IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM DAVIDSON HAMBY, JR., ) <br> BYRON SHANNON, ) <br> OTIS MITCHELL, and ) <br> JAMES BRENNAN JONES, JR. ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SHERIFF DARON HALL *et al.*, ) <br> ) <br> Defendants. ) | Case No. 3:13-cv-181 <br><br> Judge Campbell |

## MEMORANDUM OPINION

This action is in an unusual procedural posture. It was originally brought by five different *pro se* prisoner plaintiffs, but of those five, one never signed the complaint so his claims were dismissed without prejudice; one is a "three-striker" who is not entitled to proceed *in forma pauperis* and who has failed, since the denial of his application to proceed as a pauper, to submit his *pro rata* portion of the filing fee; and two other plaintiffs failed either to submit their *pro rata* share of the filing fee or properly supported applications to proceed *in forma pauperis*. Accordingly, the claims of those three defendants are subject to dismissal for failure to prosecute. Only one plaintiff, Byron Shannon, has submitted a properly completed application to proceed as a pauper. Accordingly, only this plaintiff may continue to pursue the claims in the complaint. The Court must still, however, pursuant to 28 U.S.C. § 1915(e)(2), conduct an initial review of the complaint and determine whether it states a colorable claim under 42 U.S.C. § 1983 on behalf of plaintiff Shannon.

I.     FACTUAL ALLEGATIONS

The complaint was clearly drafted by plaintiff William Hamby, whose claims are subject to dismissal for failure to prosecute, and contains only very general allegations concerning the other plaintiffs who initially joined in the complaint. Construed liberally in favor of plaintiff Byron Shannon, the complaint alleges that Shannon is an inmate at the Davidson County Sheriff's Office – Criminal Justice Center ("CJC"), that he has a documented mental illness and that the conditions of his confinement, in light of his mental illness, threaten his mental and physical well being. Six defendants are named in the complaint: Dr. Paul Babb,

Dr. Sherrill Greene, Sgt. Levy, Sheriff Daron Hall, and "Psyche Techs" Rena Reynolds and Jessica Ruth. The defendants are all named in both their individual and official capacity.

The complaint, however, does not state claims against any of the defendants in their individual capacity, since it does not actually allege any particular action taken by any particular defendant against any plaintiff. Rather, the complaint is couched in very general terms, and the allegations in the complaint suggest that the actions to which the plaintiffs object are matters of a general practice or policy on the part of the CJC. For instance, the complaint alleges that when suicidal inmates are placed in isolated suicide cells, they are put on concrete slabs with no mattress and no bedding, in inadequately heated cells.

In addition, while in a suicide cell, the suicidal inmates are fed bologna sandwiches for three meals a day, which the plaintiffs allege are inadequate nutritionally and in terms of caloric content. The complaint states that this practice "causes notable/visible weight loss and mildly diminished health." (ECF No. 1, at 3–4.) The complaint further alleges that "we have kosher (and others halal) diet issues," but neither kosher nor halal diets are provided to suicidal inmates. Instead, they too receive the bologna sandwiches, which are neither kosher nor halal. The complaint, however, does not specifically assert that Shannon or the other plaintiffs are Jewish or Muslim or that they have been injured by that policy. The plaintiffs also complain that, as a matter of policy, the food-service employees at the CJC are not required to wear hair coverings while preparing food, which is "unsanitary and unhygienic" (ECF No. 1, at 4), but they do not allege injury arising from that practice either.

More importantly, the plaintiffs allege that the CJC as a matter of policy does not provide adequate care for serious mental health needs and that this failure constitutes deliberate indifference and neglect "due to our past 5 suicide attempts." (*Id.*) Both Hamby and Jones were hospitalized for their most recent suicide attempts. Despite these attempts, and documented histories of mental illness and of being prescribed psychotropic medication, the mentally ill inmates at the CJC allegedly do not receive mental-health evaluations and are not prescribed necessary medication to treat their serious mental-health conditions.

The complaint further claims that, as a matter of policy, mentally ill inmates, rather than receiving necessary treatment, are placed in administrative segregation or punitive units, even when they leave the suicide cells, where they remain for 23 hours of every day, except for one hour spent "on roof shackles, and

cuffed with no toilet for an hour, in a cage." (ECF No. 1, at 5.) The plaintiffs assert that this isolation further aggravates their mental health issues, and causes "significant disruption of an inmate's every day life." (*Id.*) CJC staff allegedly fail to "follow up on inmates with known or suspected mental health disorders," fail to hospitalize inmates whose conditions cannot be adequately treated in the jail, and spend only "minutes per month" with the mentally ill inmates. More specifically, the medical doctors at the jail do not refer inmates to psychiatrists outside the facility, or provide either psychiatric counseling or medication. The plaintiffs assert that this failure amounts to deliberate indifference to their serious medical needs.

The plaintiffs seek compensatory damages as well as injunctive and declaratory relief to cure the allegedly unconstitutional treatment of mentally ill inmates.

## II.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III.  Law and Analysis

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Both parts of this two-part test must be satisfied to support a claim under § 1983. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Eighth Amendment "forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his] serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Sixth Circuit has further explained that a § 1983 claim asserting "[a] constitutional [violation] for denial of medical care has objective and subjective components." *Blackmore*, 390 F.3d at 895. The objective component requires the existence of a "sufficiently serious" medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citation omitted). Such a medical need has been defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citations omitted). The subjective element requires "an inmate to show that prison officials have 'a sufficiently culpable state of mind in denying medical care.'" *Blackmore*, 390 F.3d at 895 (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)). Officials have a sufficiently culpable state of mind where officials act with "deliberate indifference" to a serious medical need. *Farmer*, 511 U.S. at 834 (citations omitted). The Supreme Court has defined "deliberate indifference" as being more than mere negligence but less than acting with purpose or knowledge. *Id.* at 835. Thus, to prove the required level of culpability, a plaintiff must show that the official:  (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk. *Id.*

at 837.

The allegations in the present complaint, if proven to be true, would be sufficient to establish that the conditions at the CJC violate the constitutional rights of mentally ill inmates. Mental illness clearly can constitute an objectively serious medical condition, and it appears based on the allegations in the complaint that various jail officials knew or should have known that mentally ill inmates have not been receiving adequate treatment at the jail. In particular, the claims that suicidal inmates are placed in freezing cold cells with no mattresses and no bedding; that suicidal inmates do not get mental health treatment other than isolation in a suicide cell; that non-suicidal but otherwise mentally ill inmates are placed in isolation cells for 23 hours every day, and are allowed only one hour of "roof rec" shackled in a cage on the roof of the CJC; and that generally speaking, no matter how serious their condition, mentally ill inmates do not receive adequate treatment for their condition, taken together, indicate that the mental health needs of these inmates are being treated with deliberate indifference and/or that the inmates have been subjected to cruel and unusual punishment in violation of their Eighth Amendment rights. *Cf. Carl v. Cnty of Muskegon*, No. 1:11-cv-94, 2013 WL 1304921, at *12 (W.D. Mich. March 28, 2013) (denying summary judgment to the defendant county based on issues of fact as to whether jail policy applying to mentally ill inmates amounted to deliberate indifference to the plaintiff's serious medical needs); *Easley v. Nixon-Hughes*, 2009 WL 237733, at *1, *3 (S.D. Ohio Jan. 29, 2009) (denying defendants' motion to dismiss on the grounds that the plaintiff's allegations that "he is being denied adequate treatment for his mental illness and is being punished for being mentally ill by being placed in a "23–1 hour isolation" cell with 'supermax' conditions" and that "mentally ill inmates are improperly mixed in with non-mentally ill inmates, and that untrained corrections officers are used to perform suicide watches and distribute mental health medications" stated a deliberate-indifference claim under 42 U.S.C. § 1983).

The problem posed by the complaint in this case, however, is that it lacks specificity regarding any particular actions taken by particular defendants, and regarding the ways in which jail policy affected Byron Shannon specifically. Construed liberally, however, the complaint may be read as implying that Shannon is a mentally ill inmate who has been on suicide watch at least once. Consequently, the complaint also indicates that Shannon has suffered being placed in an inadequately heated suicide-watch cell with no

-5-

Case 3:13-cv-00181  Document 23  Filed 04/29/13  Page 5 of 7 PageID #: 82

mattress and no bedding and inadequate food, that he has been placed in a 23/1 mental-health isolation cell and has not received an adequate mental-health examination or medication for his documented mental illness.

In addition, although the complaint fails to allege facts sufficient to establish individual liability on the part of any of the individual defendants, *see Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) ("[P]roof of personal involvement is required for a supervisor to incur personal liability."), the complaint does adequately allege that the conditions imposed upon mentally ill inmates, including Shannon, result from a policy of the County itself, which is implemented by jail officials, including Sheriff Hall, who is sued in his official capacity as well as his individual capacity.

An official-capacity claim is tantamount to a claim against the entity that employs the party sued in that capacity, in this case, the Metropolitan Government of Nashville and Davidson County ("Metro Nashville"). While a county may not be held vicariously liable under 42 U.S.C. § 1983 for the actions of its employees or agents, it "may be held directly liable for a constitutional violation committed through a county policy or practice." *Jones v. Muskegon Cnty.*, 625 F.3d 935, 946 (6th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), and *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). However, "[l]iability may be imposed on a county only when a county policy or custom caused the plaintiff's injury and a direct causal link existed between the policy and the purported denial of the right to adequate medical care." *Jones*, 625 F.3d at 946 (citations and internal quotation marks omitted). Where no formal policy exists, "the critical question is whether there is a particular custom or practice that 'although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* (quoting *McClendon v. City of Detroit*, 255 F. App'x 980, 982 (6th Cir. 2007) (quoting *Praprotnik*, 485 U.S. at 127)).

The plaintiffs here allege in essence that jail officials, acting in their official capacity, violated the plaintiffs' constitutional rights because their failure to treat the plaintiffs' serious mental-health needs was pursuant to an official custom or practice of the jail, and therefore a *de facto* policy of the county itself. The plaintiffs allege that, unless hospitalized as a result of a suicide attempt, mentally ill detainees or inmates do not receive any mental health treatment whatsoever beyond monitoring by jail staff, and that they are kept

Case 3:13-cv-00181 Document 23 Filed 04/29/13 Page 6 of 7 PageID #: 83

in punitive isolation that amounts to cruel and unusual punishment and exacerbates their mental health conditions.

The Court finds, in sum, that plaintiff Shannon has adequately alleged facts from which it may be inferred that his constitutional rights have been and continue to be violated by an official custom or policy of the Davidson County Sheriff's Office, an agency of Metro Nashville. The complaint against Sheriff Hall, in his official capacity as a Metro Nashville employee, will therefore be permitted to proceed. The individual-capacity claims against the various defendants are subject to dismissal on the basis that the complaint fails to allege with the necessary specificity what actions these individuals might have taken that gave rise to an Eighth-Amendment violation. The official-capacity claims against the defendants other than Sheriff Hall will be dismissed without prejudice as redundant of the official-capacity claim against Sheriff Hall.

An appropriate order will enter.

                                                                                                           Todd Campbell
United States District Judge